**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 22-20075-CV-GAYLES/TORRES

MSC TRADING, S.A.,

     *Plaintiff,*

v.

ANDRES PABLO DELGADO, and
SOUTH FLORIDA LUMBER CO.,

     *Defendants.*

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

     This matter is before the Court on Plaintiff's motion for summary judgment. [D.E. 59] (the "Motion"). The Motion is fully briefed. [D.E. 61, 66]. Having reviewed the briefing and relevant authority, and otherwise being fully advised in the premises, the Court recommends that the Motion be **GRANTED in part and DENIED in part**.[1]

---

[1]     On March 9, 2022, the Honorable Darrin P. Gayles referred the case for all pretrial matters. [D.E. 13].

# I.    BACKGROUND

MSC is a Haitian company that purchased lumber from SFL, a Florida company operated by Delgado, for more than a decade.  In July 2020, after identifying that SFL had overcharged MSC by $8,205,000.00, the parties executed an Agreement for Recognition & Payment of Debt (the "Agreement") that obligated SFL to repay MSC in accordance with the payment schedule defined in the Agreement.  Delgado, acting in his individual capacity, separately guaranteed SFL's repayment obligations in writing (the "Guaranty").  In the months following the execution of the Agreement and the Guaranty, SFL paid $712,703.08 in accordance with the Agreement before it ceased making payments to MSC.

This lawsuit ensued.  MSC alleges four claims under Florida law against SFL and/or Delgado: (1) breach of the Agreement by SFL; (2) alternatively, unjust enrichment by SFL; (3) breach of the Guaranty by Delgado; and (4) fraud by SFL and Delgado.  SFL and Delgado have alleged 22 "affirmative defenses" in response.  And SFL separately pled two counterclaims—one for fraud and the other for an accounting—against MSC.

MSC now affirmatively moves for summary judgment on Counts 1, 2, and 3 of its complaint.[2]  It submits that, as a matter of law, it is entitled to judgment on its breach of contract claims despite the amalgam of affirmative defenses.  MSC further

---

[2]    MSC seeks summary judgment on Count 2 (unjust enrichment) only as an alternative to Count 1.  Because we believe that MSC is entitled to summary judgment on Count 1, we are effectively rendering Count 2 moot.

moves for summary judgment in opposition to both of SFL's counterclaims, arguing that it is entitled to judgment as a matter of law on each counterclaim.

Although we discuss this in greater detail below, the gravamen of the defense in this case is a legally flawed fraud theory. Essentially, Defendants submit that one of MSC's principals informed them prior to the execution of the Agreement and the Guaranty that these contracts could be "renegotiate[d]" at a later date to reflect a "proper" accounting of what SFL owed MSC. *See* [D.E. 62-1 at ¶¶ 31-36].[3] Despite this alleged misrepresentation, SFL and Delgado subsequently executed contracts that simultaneously recognized both that SFL owed a $8,205,000.00 debt to MSC and that the Agreement embodied the "entire agreement and understanding" of the parties. If it seems like a flimsy fraud theory, that's because it is. And as we explain below, this alleged misrepresentation is not a barrier to granting summary judgment in MSC's favor on MSC's breach of contract claims.

## II.   ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not

---

[3]    The only evidence in the record of this alleged misrepresentation is Delgado's sworn declaration.

3

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.*

### A.   *Defendants are liable for breach of contract.*

To prevail in a breach of contract action in Florida, one must prove (1) the existence of a valid contract, (2) a material breach of that contract, and (3) damages flowing from the breach.  *See, e.g., Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).  There is no genuine dispute regarding whether Plaintiff has proven these elements, although at this stage the precise amount of damages owed to Plaintiff appears to be growing on a monthly basis.

The Court must note at the outset that the only evidence submitted by Defendants in response to the pending motion for summary judgment is Delgado's sworn declaration.  As we explain in detail below, we are not persuaded that this declaration is sufficient to raise a genuine dispute of material fact that precludes the entry of summary judgment.

To begin with, *there is no dispute that the Agreement and the Guaranty are valid and enforceable contracts.*  Indeed, Delgado conceded that these contracts were valid and enforceable when he successfully fought to enforce the arbitration provision contained in the Agreement at the outset of this case.  *See* [D.E. 6 at 6-7] ("Delgado signed this agreement as both the sole officer of SFL on page 4 but also in his individual capacity on page 5 of the Agreement.  The Guaranty itself is not a separate

5

agreement, but rather part of the consecutively paginated Agreement. [ . . . . ] This is an express acknowledgement and acquiescence to the terms of the Agreement between MSC and SFL where Delgado agrees to comply with and assume the same terms that SFL has bound itself to in the Agreement.").[4]

But even if Defendants had not already conceded the validity of the Agreement and the Guaranty, their proposed theory for disproving the validity of these contracts—i.e., fraudulent inducement—fails as a matter of law.   To reiterate, Defendants submit that they were persuaded to execute the contracts because, prior to the execution, MSC told them that both the contracts and the accounting relevant to the sum of the debt owed could be renegotiated at a future date.   In Defendants' view, that verbal statement—which is evidenced by only Delgado's sworn declaration—constitutes a fraudulent misrepresentation that nullifies the validity of the contracts.

---

[4]     Putting aside Defendants' fraud argument for a moment, judicial estoppel operates here to preclude Defendants from disputing the validity of the Agreement and the Guaranty at this phase of the case because Delgado previously relied upon its validity to compel the case to arbitration.  *See, e.g., City of Hollywood v. Witt*, 939 So. 2d 315, 318 (Fla. 4th DCA 2006) ("The law of the case doctrine is a principle of judicial estoppel serving to preclude the re-litigation of matters within the confines of the same case."); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.   This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (modifications adopted and internal quotations and citations omitted).

The primary problem with Defendants' argument is that, subsequent to MSC's alleged misrepresentation, they signed an written agreement that contained both a merger clause and a modification clause:

> This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter of the Agreement and supersedes all prior agreements and understandings, whether written or oral, unless expressly provided otherwise herein. No amendment, modification, or termination of this Agreement, unless expressly provided otherwise herein, shall be valid unless made in writing and signed by each of the Parties.

[D.E. 6-1 at 3] (emphasis omitted).

So, on the one hand, Defendants agreed in writing that the alleged misrepresentation was unenforceable because it constituted a prior understanding between the parties; *the* Agreement is the *entire* agreement. As a matter of law, that negates the viability of any fraud defense to enforcement of Plaintiff's contract. There are a legion of cases interpreting Florida law that have found fraud claims, like Defendants' defenses here, to be barred by the inclusion of a merger clause in an agreement that was executed after the allegedly fraudulent misrepresentations. *See, e.g., White Construction Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1325-26 (M.D. Fla. 2009) ("[A] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.") (quoting *Mac-Gray Services, Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005)); *Ferox, LLC v. ConSeal Int'l, Inc.*, 175 F. Supp. 3d 1363, 1376 (S.D. Fla. 2016) (Gayles, J.) ("[I]t is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable

where the representations are not contained in the subsequent written agreement between the parties."); *Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999) ("Indeed, fraudulent inducement claims will fail even where the subsequent contract simply says nothing about the allegedly false promise."); *Yamashita v. Merck & Co.*, No. 11-cv-62473, 2013 WL 275536, at *4 (S.D. Fla. Jan. 24, 2013) ("The law is clear: A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or dealt with, or expressly contradicted, in a later written contract.").

And, on the other hand, MSC's alleged misrepresentation is not an actual misrepresentation; the text of the Agreement expressly permits modification—i.e., renegotiation—of the Agreement and is therefore consistent with what MSC purportedly told Defendants prior to executing the Agreement and the Guaranty. So, either way you slice it, Defendants' fraud theory in opposition to the contract claim here fails as a matter of law.

Defendants rely on *Oceanic Villas, Inc. v. Godson*, 148 Fla. 454 (Fla. 1941), and its progeny, for the proposition that a merger clause cannot bar a fraudulent inducement claim. In our view, these cases stand for the proposition that a merger clause, without more, may be insufficient to bar a fraudulent inducement claim *unless* the merger clause expressly mentions fraud. As the Florida Supreme Court put it:

> To hold that by the terms of the contract which is alleged to have been procured by fraud, the lessor could bind the lessee in such manner that lessee would be bound by the fraud of the lessor would be against the fundamental principles of law, equity, good morals, public policy and fair dealing. It is well settled that a party can not contract against liability for his own fraud. We do not mean by this, however, to hold that a

> contract may not be made incontestable by the terms thereof on the ground of fraud. We recognize the rule to be that fraud in the procurement of a contract is ground for rescission and cancellation of any contract unless for consideration or expediency the parties agree that the contract may not be cancelled or rescinded for such cause, and that by such special provisions of a contract it may be made incontestable on account of fraud, or for any other reason.

*Oceanic Villas*, 148 Fla. at 458-59 (internal citations omitted).

But here the merger clause is not the only bar to Defendants' fraud claim because the Agreement and the Guaranty expressly contemplate the ability of the parties to renegotiate and thereby modify these contracts. Moreover, insofar as MSC's alleged misrepresentation might imply that the debt defined in the Agreement and the Guaranty was not accurately calculated, these contracts contradict that implied assertion by expressly defining the sum of the debt due to MSC—a sum that Defendants unequivocally acknowledged in writing. It is well established that when an oral misrepresentation is adequately covered or contradicted by the terms of a subsequently written contract, the purportedly deceived party cannot recover for fraud under Florida law. *See, e.g., DeGeorge*, 913 So. 2d at 634. Therefore, Defendants' cases are unpersuasive.

In other words, even if Defendants could assert that the oral representations could amount to fraudulent misrepresentations of fact, Defendants could not have possibly relied on them, as a matter of law, given the express provisions of the Agreement that fully negates any such reliance. Defendants' cases cited in opposition to the motion here are thus plainly inapposite. *See, e.g., Arieso, Inc. v. Rhamani*, 397 F. App'x 570, 571 (11th Cir. 2010) (affirming judgment on breach of contract claim;

"if a contract contains a merger clause that specifically bars reliance on any representations not set forth in the contract, the party claiming fraud is barred from reliance on any other representations.") (applying same principle under Georgia law); *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (dismissing fraud claim under Florida law; "No action for the tort of fraud in the inducement will lie where the alleged fraud contradicts a subsequent written contract. . . . Reliance on fraudulent representations is unreasonable as a matter of law in such situations."); *Yatak v. La Placita Grocery of Fort Pierce Corp.*, 49 Fla. L. Weekly D363 (Fla. 4th DCA Feb. 14, 2024) (dismissing fraud claim and damages; "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.") (quoting *DeGeorge*, 913 So. 2d at 634); *Parque Towers Developers, LLC v. Pilac Mgmt., Ltd.*, 49 Fla. L. Weekly D190 (Fla. 3d DCA Jan. 17, 2024) (affirming judgment on fraud claim for same reasons, distinguishing *Oceanic Villas,* because the language of that agreement disclaimed any possible reliance on contrary oral representations).

*There is also no dispute that SFL and Delgado respectively breached the Agreement and the Guaranty.* The contracts incorporated a payment schedule that defined the installments in which SFL (or Delgado by virtue of the Guaranty) was obligated to repay the debt. There is no genuine dispute that Defendants began making payments in accordance with the schedule but ceased making payments before the sum of the debt was repaid. *Compare* [D.E. 58 at ¶¶ 21-22] *with* [D.E. 62 at ¶¶ 21-22]. Defendants expressly concede that they paid more than $700,000.00 to

MSC, but they submit no evidence to dispute the fact that the remaining balance has yet to be repaid. Given that the Agreement and the Guaranty plainly required Defendants to make timely payments in accordance with the agreed-upon schedule, SFL indisputably breached the Agreement by defaulting on its payment obligations and Delgado likewise breached the Guaranty by failing to timely cure SFL's default.

*Finally, there is no dispute that MSC has suffered damages flowing from the breach.* Neither the Agreement nor the Guaranty include an "acceleration clause" that makes the full debt due immediately in the event of default. But the undisputed record reveals that, by April 2021, Defendants stopped paying MSC in accordance with the Agreement and the Guaranty. Since then, approximately 36 months have passed wherein MSC has not received the minimum monthly payment of $80,000.00. MSC has clearly been damaged by Defendants' breach, although the precise amount of damages cannot be calculated on the record before us because of complications relating to the lack of an acceleration clause and MSC's contractual entitlement to interest as well as attorneys' fees and costs. In our view, summary judgment should be GRANTED as to Defendants' liability on Counts 1 and 3; the precise amount of damages can be ascertained at trial when Count 4, which is not subject to the pending summary judgment motion, is finally adjudicated.

### B. *The affirmative defenses do not preclude summary judgment on MSC's breach of contract claims.*

In addition to moving for summary judgment on three out of four alleged claims, MSC also moves for summary judgment against all of Defendants' affirmative defenses as well as both of Defendants' counterclaims. This Court finds that

Defendants' defenses do not save them from liability on MSC's breach of contract claims, even though MSC is *not* entitled to summary judgment on all of the alleged defenses. This Court also recommends entering summary judgment in MSC's favor on both of Defendants' counterclaims. Accordingly, we analyze the defenses below in the order that they were pled before turning to the counterclaims. *See* [D.E. 53 at 9-16]; [D.E. 54 at 6-7].

### 1. Failure to state a claim for breach of contract.

Defendants' first "affirmative defense" is not an affirmative defense; by contrast, it is a redundant denial of MSC's allegations. *See, e.g., Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) ("[A] defense which simply points out a defect or lack of evidence in a plaintiff's case is not an affirmative defense."). Having already determined that MSC has adequately pled and proven its breach of contract claim, Defendants' first alleged defense is dead on arrival. Summary judgment on Affirmative Defense No. 1 should be GRANTED in MSC's favor.

### 2. Failure to state a claim for fraud.

Again, this is a redundant denial masquerading as an affirmative defense. Regardless, this defense is narrowly targeted at Count 4 of the operative complaint— i.e., MSC's fraud claim. MSC has not moved for summary judgment on its fraud claim, and so it would be premature to say that MSC prevails at this juncture because it has yet to provide the Court with argument and evidence relevant to its burden of proof on the fraud claim. With that said, a denial in a pleading may be stricken by

the Court *sua sponte* if it is redundant.  *See* FED. R. CIV. P. 12(f).  The Court should exercise its discretion here and STRIKE Affirmative Defense No. 2 for redundancy.

### 3. *Fraud in the inducement.*

This affirmative defense is not a redundant denial, but as we discussed above the defense fails as a matter of law because of the merger and modification clauses in the subsequently executed Agreement and Guaranty.  A related but additional reason similarly compels the Court to recommend summary judgment in MSC's favor on this affirmative defense: the parol evidence rule.

It is well established that the "parol evidence rule" forbids a party from "providing evidence of prior or contemporaneous representations to vary or contradict the clear and unambiguous terms of a contract." *Eclipse Medical*, 262 F. Supp. 2d at 1343 (citing *Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983) and *Greenwald v. Food Fair Stores, Corp.*, 100 So. 2d 200, 202 (Fla. 3d DCA 1958)); *Philadelphia & Trenton R. Co. v. Stimpson*, 39 U.S. 448, 461 (1840).  Here, that is essentially what Delgado's sworn declaration attempts to do—provide evidence of a prior statement to vary the unambiguous terms of the Agreement and the Guaranty.

Even if we were persuaded, which we are not, that MSC's alleged verbal misrepresentations meaningfully varied the terms of the written contracts, Delgado's testimony regarding those verbal statements would be inadmissible because of the parol evidence rule.  And because Delgado's testimony is the *only* evidence proffered by Defendants on this subject, its exclusion means that no reasonable jury could find

in favor of Defendants on their fraud theory.  Summary judgment on Affirmative Defense No. 3 should be GRANTED in MSC's favor.

### 4.    *Variance of express term.*

Defendants proffer no facts for this defense in either their pleading or their response to the Motion.   Indeed, aside from their fraud theory, Defendants neglect to discuss the specifics of any of their affirmative defenses.  They summarily state instead that MSC's arguments relevant to the alleged affirmative defenses "merit less attention" from the Court because MSC submits only "conclusory" arguments about how Defendants' alleged defenses are unsupported by facts, frivolous, insufficient, or some combination thereof.  *See* [D.E. 61 at 8].   In our view, these arguments merit the attention of the Court simply because MSC has moved for summary judgment on Defendants' affirmative defenses.  Moreover, seeing as it is Defendants' burden to substantiate their alleged defenses with evidence at this phase of the case, Defendants' blasé response to MSC's "unsupported by facts" argument is wholly unpersuasive.

This vaguely alleged defense gives MSC and the Court very little to work with. And that problem is exacerbated by Defendants' intentional failure to elaborate on the substance of how MSC's breach of contract claims vary the express terms of the Agreement and/or the Guaranty.

Could it be that the lack of an acceleration clause when read in conjunction with MSC's demand for the full payment of the debt varies the express terms of the

Agreement?  Maybe.  But Defendants do not say so, and it is not the Court's job to make this argument for them.

In our view, Defendants have abandoned this affirmative defense.  *See, e.g., Floyd v. Home Depot U.S.A., Inc.*, 274 F. App'x 763, 765 (11th Cir. 2008); *Edmondson v. Board of Trustees of the University of Alabama*, 258 F. App'x 250, 253 (11th Cir. 253) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).  Accordingly, summary judgment on Affirmative Defense No. 4 should be GRANTED in MSC's favor.

### 5. *Derogation of express term.*

This affirmative defense suffers from the same deficiency as the foregoing affirmative defense.  Defendants have abandoned it, and therefore summary judgment on Affirmative Defense No. 5 should be GRANTED in MSC's favor.

### 6. *Full performance.*

This is another denial purporting to be an affirmative defense.  Defendants essentially allege here that there has been no breach of contract because they have fully performed all of their obligations under the Agreement and the Guaranty.  But as we have discussed above, the undisputed record clearly shows that Defendants

15

have not fully performed under the Agreement and the Guaranty because they have failed to make payments in accordance with the debt repayment schedule since April 2021. There is no issue of fact to that effect in this record. Accordingly, it is undisputed that Defendants have not fully performed under the contracts and therefore summary judgment on Affirmative Defense No. 6 should be GRANTED in MSC's favor.

### 7. *Substantial performance.*

Again, this is a denial purporting to be an affirmative defense. This allegation is similar to the preceding defense; however, here Defendants submit that they have *substantially* performed their obligations under the Agreement and the Guaranty and therefore there is no breach of contract.

"Substantial performance" is the performance of a contract that, while not full performance, is "so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor's right to recover whatever damages may have been occasioned him by the promisee's failure to render full performance." *Strategic Resources Group, Inc. v. Knight-Ridder, Inc.*, 870 So. 2d 846, 848 (Fla. 3d DCA 2003).

Here, Defendants were obligated to pay MSC $80,000.00 per month for a total of 64 months. The record reflects that, approximately nine months into the 64-month repayment term, Defendants stopped making their monthly payments. Defendants were additionally obligated to make six annual payments ranging from $293,524.19 to $880,572.56. The record reflects that none of those annual payments have been

made.  As a matter of law, this undisputed record does not support any claim of substantial performance.  *See, e.g., Knight-Ridder*, 870 So. 2d at 848 (finding that a barely discernable reduction in the size of a newspaper ad constituted substantial performance); *Treasure Coast, Inc. v. Ludlum Const. Co., Inc.*, 760 So. 2d 232, 234-35 ("There is almost always no such thing as 'substantial performance' of payment between commercial parties when the duty is simply the general one to pay.").  Summary judgment on Affirmative Defense No. 7 should be GRANTED in MSC's favor.

### 8.     *Performance hindered by Plaintiffs.*

Defendants' have abandoned this defense as well.  The relevant pleading proffers no facts relating to MSC's alleged "actions, conduct or omissions" that "hindered" Defendants' ability to perform under the contract.  [D.E. 53 at 11].  And, in response to the Motion, Defendants declined to specifically engage with this alleged defense.  We have no idea what MSC may have done to hinder Defendants' performance under the Agreement and the Guaranty because Defendants have failed to direct the Court to evidence in the record that supports this defense, which is their burden at this juncture.  *See, e.g., Floyd*, 274 F. App'x at 765.  Accordingly, summary judgment on Affirmative Defense No. 8 should be GRANTED in MSC's favor.

### 9.     *Actual cause.*

This is another denial instead of an affirmative defense.  It merely claims that MSC will not be able to prove that Defendants caused the damages flowing from the alleged breach of contract and fraud.  Having determined that MSC has sufficiently

proven that Defendants caused the damages flowing from their respective breaches of the Agreement and the Guaranty, we could recommend granting summary judgment on this score to MSC. But MSC's fraud claim is not before the Court at this juncture, and this defense is pled in such a way that it can only be read as applying to all of MSC's alleged causes of action. Accordingly, because this defense amounts to nothing more than a redundant denial, the Court should exercise its discretion under Rule 12(f) and STRIKE Affirmative Defense No. 9.

### 10. *Intervening or superseding cause.*

Given the substance of this defense, which claims that the COVID-19 pandemic was the intervening or superseding cause of MSC's damages, we cannot read it as reasonably applying to MSC's fraud claim. We have our doubts about its merit given that the Agreement and the Guaranty were both signed in July 2020—*months* after the COVID-19 pandemic began. But, in any event, Defendants have abandoned this defense by failing to make any meaningful argument regarding its substance in response to the Motion. Because of this abandonment, summary judgment on Affirmative Defense No. 10 should be GRANTED in MSC's favor at least as against the breach of contract claims.

### 11. *Independent tort doctrine.*

This defense is exclusively targeted at MSC's fraud claim and submits that the claim is barred because MSC cannot prove that the allege fraud is independent from its breach of contract claims. *See, e.g., Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J. concurring); *Lamm v.*

*State Street Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (discussing the independent tort doctrine under Florida law).

MSC has not sought summary judgment on its fraud claim, which essentially alleges that Defendants entered into the Agreement and the Guaranty *without the intent to abide by the terms of those contracts*. For example, MSC highlights Delgado's statements made during this litigation relating to his apparent belief that Defendants did not have to abide by the payment schedule appended to the Agreement because he believed that it would be renegotiated before the entire debt became due.

As a result, MSC alleges, it has incurred damages that are distinct from its breach of contract claims—namely, instead of contracting with Defendants for the repayment of the debt in 64 installments, MSC could have pursued other avenues to recover the entire debt immediately (e.g., a lawsuit), thereby making the entire debt due at the time of judgment.

Again, Defendants proffer no facts or argument to support their independent tort doctrine defense. Based upon our independent review of the record, we are not persuaded that MSC's fraud claim is obviously barred by the independent tort doctrine. But again, it is not our job to make Defendants arguments for them. This is another abandoned defense and, as such, summary judgment on Affirmative Defense No. 11 should be GRANTED in MSC's favor at least as against the breach of contract claims.

### 12. *Failure to mitigate damages.*

Aside from alleging that the Agreement and the Guaranty do not contain an acceleration clause, which would make the entire debt due upon the event of default, Defendants provide the Court with no evidence or argument regarding MSC's purported failure to mitigate their damages. Because of the lack of an acceleration clause, we believe that MSC is not entitled to recover on its breach of contract claims for the debt payments that have not yet come due in accordance with to the payment schedule. But we fail to grasp exactly how the lack of an acceleration clause constitutes a failure to mitigate MSC's damages because Defendants have intentionally neglected to enlighten us regarding this theory of defense. In our view, this defense has also been abandoned. Accordingly, summary judgment on Affirmative Defense No. 12 should be GRANTED in MSC's favor.

### 13. *Statute of limitations.*

Under Florida law, the statute of limitations applicable to Counts 1, 2, and 3 is five years. *See* Fla. Stat. § 95.11(2)(b). The statute of limitations applicable to Count 4 is four years. *See* Fla. Stat. § 95.11(3)(i). A review of the operative complaint shows that the relevant conduct—i.e., the formation and breach of the alleged contracts and the fraudulent inducement tied to those contracts—took place in 2020 and 2021. *See* [D.E. 52-1]. Considering that this lawsuit was instigated on January 6, 2022, [D.E. 1], it is clear that MSC's claims are *not* barred by the applicable statute of limitations. This defense fails as a matter of law, and therefore summary judgment on Affirmative Defense No. 13 should be GRANTED in MSC's favor.

### 14. *Laches.*

Considering that the statute of limitations defense fails, Defendants' equitable laches defense is dubious at best because they allege that they have been "highly prejudice[ed]" by MSC's delay in filing this lawsuit *eight months* after the harm of Defendants' alleged breach accrued.  Regardless, by failing to proffer any evidence or argument in support of this alleged defense, we find that Defendants have abandoned this defense as well.  Summary judgment on Affirmative Defense No. 14 should be GRANTED in MSC's favor.

### 15. *Waiver.*

Defendants allege that MSC waived its right to assert the claims in the operative complaint by failing to "enforce the payment term schedule of the Agreement" and thereby "discover[ing]" the alleged fraud.  *See* [D.E. 53 at 13].  Despite this confusing allegation, Defendants again neglect to offer the Court any evidence or argument relevant to this alleged defense.  It has likewise been abandoned.  Summary judgment on Affirmative Defense No. 15 should be GRANTED in MSC's favor.

### 16. *Frustration of purpose.*

Again, Defendants offer no argument or evidence in response to MSC's motion for summary judgment.  They have abandoned this defense as well, which alleges without facts or legal support that the purpose of the contracts were "so frustrated" that they were "rendered unenforceable."  *See* [D.E. 53 at 13-14].  In light of Defendants' silence, we struggle to ascertain how the purpose of the Agreement and

the Guaranty—i.e., the repayment of debt—was frustrated and how that frustration results in the unenforceability of the contracts.  This defense has been abandoned. Summary judgment on Affirmative Defense No. 16 should be GRANTED in MSC's favor.

### 17. *Commercial frustration doctrine.*

This defense, which is similar to its predecessor, has also been abandoned through Defendants' silence in response to the Motion.  Accordingly, summary judgment on Affirmative Defense No. 17 should be GRANTED in MSC's favor.

### 18. *Impossibility of performance.*

Here, the only evidence relevant to this defense that was submitted in response to the Motion is Delgado's statement that COVID-19 "utterly devastated" the lumber industry (and therefore SFL) because of the pandemic's correlation with "skyrocketing material costs and shipping issues." [D.E. 62-1 at ¶ 37].  Having lived through the inflationary period caused by the COVID-19 pandemic, we are not blind to the truth that some businesses faced operational difficulties during this time.  We do note, however, that the Agreement and the Guaranty were signed *after* the pandemic was well underway.

But standing alone, Delgado's general reference to pandemic-era economics says very little about whether SFL was actually in a position to make its required monthly debt repayments because Delgado's testimony provides no insight into the company's finances aside from implying that the business experienced a downturn. Moreover, the proffered evidence says nothing about why it was impossible for

Delgado to individually meet his obligations under the Guaranty. For all we know, Delgado may have had millions of dollars sitting in a savings account that could have been used to make timely payments; alternatively, he may not have had two nickels to rub together.

The point is that the Court does not know the facts supporting this defense because Defendants have failed to produce more than a scintilla of evidence relating to the issue of impossibility. In our view, no reasonable juror could conclude from this record that repayment according to the prescribed schedule was impossible to accomplish because of the pandemic. And to compound Defendants' evidentiary deficiency, they have again failed to articulate a responsive argument regarding how they have met their burden at this juncture. In other words, they have abandoned this defense as well. Accordingly, summary judgment should be GRANTED in MSC's favor on Affirmative Defense No. 18.

### 19. *Ratification.*

Defendants have abandoned this defense as well because they have neglected to proffer evidence or argument relating to their allegation that MSC somehow ratified Defendants' non-payment. Indeed, the instigation of this lawsuit seems to cut in the opposite direction from ratification because MSC appears quite keen to enforce its right of collection on the debt. Summary judgment should be GRANTED in MSC's favor on Affirmative Defense No. 19.

### 20. *Equitable estoppel.*

Here, Defendants allege that MSC is barred from bringing "any claims" against Defendants because, after Defendants' alleged default, the parties negotiated MSC's potential investment in SFL (and thereby apparently discussed the possibility of modifying the Agreement and the Guaranty such that the debt owed to MSC would become MSC's equity stake in SFL). [D.E. 53 at 14-15]. It is undisputed that these negotiations went nowhere: MSC did not invest in SFL, and the contracts were not modified.

Delgado briefly discussed these negotiations in his sworn declaration. *See* [D.E. 62-1 at ¶¶ 38-42]. But Defendants offer no explanation for how unsuccessful investment negotiations invite the operation of equitable estoppel, and nothing in the record plainly indicates to us that Defendants have been legally absolved of their repayment obligations. Indeed, once again, Defendants meet MSC's summary judgment arguments with silence.

We can imagine that, if the contracts had been modified to reflect that Defendants satisfied their debt by giving MSC equity in SFL, MSC would then be estopped from suing for repayment of the debt because, under this hypothetical, Defendants may be able to prove each element of their estoppel claim. *See, e.g., State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) ("The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon."). But

we are not here to articulate Defendants' arguments for them because we are an arbiter, not an advocate. And, in any event, our hypothetical is inconsistent with the undisputed record before us.

MSC moved for summary judgment on all of Defendants' affirmative defenses, attacking each one individually. And in their eight-page response, Defendants dedicated only one paragraph to answering these attacks. This paragraph fails to address Defendants' 22 affirmative defenses, including their estoppel defense, with any specificity. And to reiterate, it is not the Court's job to connect the dots for Defendants. Their silence here equates to an abandonment of their estoppel claim. Summary judgment on Affirmative Defense No. 20 should be GRANTED in MSC's favor.

### 21.   *Unclean hands.*

This affirmative defense is targeted exclusively at Count 2, unjust enrichment, which is MSC's only equitable claim. We find below that Count 2 is moot because it was pled as an alternative to Count 1. Accordingly, this defense is also moot. Therefore, insofar as the Motion relates to Affirmative Defense No. 21, it should be DENIED as moot.

### 22.   *There is not an acceleration clause.*

In our view, this is the only affirmative defense that should survive summary judgment. It is undisputed that the Agreement and the Guaranty do not contain an acceleration clause, yet MSC claims to be entitled to the full unpaid debt.

As of this writing, there are still 18 installments prescribed by the payment schedule that have not yet come due—i.e., monthly payments for May 2024 through October 2025.  *See* [D.E. 6-1 at 6].   Because of the lack of an acceleration clause, it undisputed that Defendants have not yet breached the Agreement or the Guaranty insofar as these future months are concerned.  Accordingly, this partial defense to damages should survive summary judgment.  To the extent that the Motion relates to Affirmative Defense No. 22, it should be DENIED.

### C.      *The alternative unjust enrichment claim is moot.*

Having determined that MSC is entitled to summary judgment on Count 1, we concur with MSC that it cannot recover on its unjust enrichment claim because this equitable claim was pled as an alternative to MSC's breach of contract claim against SFL.   Insofar as MSC alternatively sought summary judgment on its unjust enrichment claim, the Motion should be DENIED as moot and Count 2 of the operative complaint should also be DISMISSED.

### D.      *The counterclaims also fail as a matter of law*

In addition to the affirmative defenses, MSC has moved for summary judgment on both of SFL's counterclaims.  Counterclaim No. 1 alleges fraud against MSC, and we have already discussed why this cause of action fails.  Counterclaim No. 2 seeks an accounting, and we explain below why this cause of action fails as well.

To reiterate, the fraud theory alleged in Counterclaim No. 1 fails because Defendants have not produced any admissible evidence from which a reasonably jury could find fraud.  The parol evidence rule renders Delgado's testimony regarding

MSC's alleged misrepresentations inadmissible and, without that evidence, there is nothing in the record (apart from Defendants' pleadings) that can be used to prove the alleged fraud.  Insofar as the Motion relates to Counterclaim No. 1, it should be GRANTED in MSC's favor.

Regarding Counterclaim No. 2, which is contingent on the success of Defendants' fraud theory because it seeks an accounting on the assumption that the Agreement and the Guaranty must be rescinded due to fraud, we find that there is no genuine dispute of material fact regarding the value of the debt owed to MSC resulting from the alleged overcharges.  The parties have already conducted an accounting for that purpose, and they arrived at a number that is unambiguously defined in the Agreement as the "Capital Amount"—$8,205,000.00.  *See* [D.E. 6-1 at 1].  Moreover, in response to MSC's motion for summary judgment on Counterclaim No. 2, Defendants proffer no evidence and no argument relevant to this defense. Indeed, the word "accounting" never appears in their response.  Defendants have likewise abandoned this cause of action.  So, for these reasons, summary judgment on Counterclaim No. 2 should be GRANTED in MSC's favor.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be **GRANTED in part and DENIED in part** in accordance with this report and recommendation.

Specifically, Judgment as a matter of law should be entered in MSC's favor as to liability under Count 1 and Count 3 of the Complaint.  Count 2 of the Complaint

should be Dismissed.  Judgment as a matter of law should also be entered in MSC's favor on both counts of Defendants' counterclaims.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of May, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge