UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20075-DPG

**MSC TRADING, S.A.**,

    Plaintiff,

v.

**ANDRES PABLO DELGADO and
SOUTH FLORIDA LUMBER CO.**,

    Defendants.

_____/

### ORDER ADOPTING AND AFFIRMING REPORT OF MAGISTRATE JUDGE

**THIS CAUSE** comes before the Court on Chief Magistrate Judge Edwin G. Torres' Report and Recommendation on Plaintiff's Motion for Summary Judgment (the "Report"). [ECF No. 72]. On April 12, 2024, Plaintiff MSC Trading, S.A. ("MSC Trading") filed its Motion for Summary Judgment. [ECF No. 59]. Defendants Andres Delgado ("Delgado") and South Florida Lumber Company ("SFL") filed their response on April 26, 2024. [ECF No. 61]. On May 3, 2024, MSC Trading filed its reply. [ECF No. 66]. On March 9, 2022, the case was referred to Judge Torres for a ruling on all pretrial, non-dispositive matters, and for a report and recommendation on any dispositive matters. [ECF No. 13].

On May 20, 2024, Judge Torres issued his Report recommending that the Court: (1) grant summary judgment in favor of MSC Trading as to Counts I and III of the Amended Complaint; (2) dismiss Count II of the Amended Complaint as it was plead in the alternative to Count I; (3) grant summary judgment in favor of MSC Trading as to Counts I and II of the Counterclaim; (4) grant summary judgment in favor of MSC Trading as to Defendants' Affirmative Defense Nos. 1, 3–8,

1

10–20; (5) strike Defendants' Affirmative Defense Nos. 2 and 9; and (6) deny summary judgment as to Defendants' Affirmative Defense Nos. 21–22. [ECF No. 72]. On June 3, 2024, Defendants filed their Objections to the Report ("Objections"). [ECF No. 76]. MSC Trading filed its response on June 14, 2024. [ECF No. 79].

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

Defendants argue that the Report errs in four ways: (1) the Report improperly concluded that the at-issue contract between MSC Trading and SFL (the "Agreement") and the personal guaranty executed by Delgado (the "Guaranty", together with the Agreement, the "Contracts") are valid and enforceable;[1] (2) the Report incorrectly concluded that the merger and modification clauses in the Agreement bar Defendants' fraudulent inducement counterclaim and affirmative defense; (3) the Report improperly weighed the credibility of Defendants' evidence and determined that evidence to be "flimsy"; and (4) the Report erroneously suggests that MSC Trading could recover damages for installment payments not yet due when this action commenced and that have accrued in the interim. [ECF No. 76].

---

[1] Though Defendants argue this in passing in the background section of their Objections, the Court will fully address this issue as it is dispositive.

2

This Court finds no clear error with Judge Torres' well-reasoned analysis and recommendations of the portions of the Report for which Defendants did not object. The Court agrees that MSC Trading is entitled to summary judgment as to Defendants' Affirmative Defense Nos. 4–8 and 10–20 and as to Count II of Defendants' Counterclaim because they were abandoned by Defendants. The Court also agrees that Defendants' Affirmative Defense Nos. 2 and 9 should be stricken as they are simply redundant denials of MSC Trading's claims. Finally, Defendants' Affirmative Defense Nos. 21 and 22[2] should be denied as recommended by the Report.

Regarding the portions of the Report that were objected to, this Court conducted a *de novo* review of the record and agrees with the remainder of Judge Torres' well-reasoned analysis and recommendations.

As a threshold matter, the Court finds the Contracts to be valid and enforceable. As correctly noted by MSC Trading, Defendants misconstrue the basis of the Report's finding that Defendants conceded to the validity and enforceability of the Contracts. Contrary to what Defendants ague, the Report did not state that a party who moves to compel arbitration concedes to the validity of the whole contract. *See* [ECF No. 72 at 5–6]; [ECF No. 76 at 4]. Instead, the Report accurately found that Defendants acknowledged the validity of the Contracts as factual admissions in support of their successful motion to compel arbitration. [ECF No. 6 at 1–2] ("3. During the course of this relationship, SFL and MSC entered into an 'Agreement For Recognition & Payment of Debt' dated July 27, 2020 . . . ."); *id.* at 2 ("5. Delgado, individually, served as a guarantor to this agreement. . . . Additionally, Delgado's personal guaranty is part of

---

[2] Defendants raise only a limited objection, addressed below, to the extent that the Report implies the incorrect scope of damages. Defendants do not disagree with the Report's recommendation that summary judgment be denied as to Defendants' Affirmative Defense No. 22.

3

the Agreement . . . ."); *id.* at 7 ("[The Guaranty] is an express acknowledgement and acquiescence to the terms of the Agreement between MSC and SFL where Delgado agrees to comply with and assume the same terms that SFL has bound itself to in the Agreement. . . . MSC and Delgado have entered into an agreement which has incorporated and assumed the ***full terms of the Agreement***.") (emphasis added); *see* [ECF No. 15]. Furthermore, at no point in its motion to compel arbitration did Defendants reserve the right to challenge the validity of the Contracts.

Defendants original position was clear: both Contracts are valid and enforceable.[3] As such, Defendants are judicially estopped from arguing the contrary. *Korman v. Iglesias,* 778 F. App'x 680, 681 (11th Cir. 2019) ("Judicial estoppel is an equitable doctrine intended to protect the integrity of the courts from parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment.") (citation and quotation omitted); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Moreover, Defendants' Response to Plaintiff's Motion for Summary Judgment failed to refute MSC Trading's assertion that the Contracts are valid and enforceable. *See* [ECF No. 61]; *Jones v. Bank of Am., N.A.,* 564 F. App'x 432, 434 (11th Cir. 2014) (noting that "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned" and granting defendant's motion for summary judgment because plaintiffs failed to respond to certain arguments) (citation

---

[3] Without any legal support, Defendants liken their motion to compel arbitration to that of a motion to dismiss for the proposition that their argument in the motion to compel cannot be used as an admission. [ECF No. 76 at 5]. Assuming, *arguendo,* this were true, case law is clear that any and all affirmative defenses must be raised in the first responsive pleading. Thus, Defendants' failure to raise the affirmative defense that the Contracts are not valid and enforceable in their "motion to dismiss" constitutes waiver. *Gottlieb & Gottlieb, P.A. v. Crants*, 657 F. App'x 920, 922 (11th Cir. 2016) (Federal Rules of Civil Procedure "8 and 9 contain specific instructions about alleging affirmative defenses and conditions precedent. A defendant responding to a pleading . . . must state affirmatively . . . any avoidance or affirmative defense.").

and quotation omitted). Therefore, the Court agrees with the Report's finding that the Contracts are valid and enforceable.[4]

The Court also agrees with the Report's finding that Defendants' fraudulent inducement counterclaim and affirmative defense fail as a matter of law. In an attempt to invalidate the Contracts, Defendants argue that MSC Trading made a representation that, once the Contracts were executed to placate MSC Trading's board of directors, the parties could "either renegotiate or conduct a proper account to determine what, if anything, was due and owing between SFL and MSC" Trading (the "Representation"). [ECF No. 62-1 ¶ 35]. Defendants argue that this alleged Representation shows that "no amount was ever agreed to", [ECF No. 76 at 5], and the Representation was relied on when signing the Contracts, [ECF No. 62-1 ¶ 36].

The Report correctly found that the alleged Representation is adequately covered by the terms of the Agreement. The Report acknowledges that under *Oceanic Villas, Inc. v. Godson*, 148 Fla. 454 (1941), a merger clause alone is insufficient to bar a fraudulent inducement claim unless the merger clause expressly states that the contract cannot be rescinded for fraud. [ECF No. 72 at 8]. However, the Report distinguished *Oceanic Villas* to the facts here with support from a plethora of legal authority. Article 7 of the Agreement contains both a merger and modification clause which state, in relevant part, that

> This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter of the Agreement and supersedes all prior agreements and understandings, whether written or oral, unless expressly provided otherwise herein. No amendment, modification, or termination of this Agreement, unless expressly provided otherwise herein, shall be valid unless made in writing and signed by each of the Parties.

[ECF No. 6-1 at 3, Article 7].

---

[4] Defendants did not object to the Report's findings that there is no genuine dispute that Defendants discontinued payments to MSC Trading in breach of the Contracts and that MSC Trading suffered damages as a result.

5

While the Agreement's merger clause does not expressly disallow for recission based on fraud, the modification clause here allows the parties to renegotiate. *Id.* As such, the Agreement adequately covers the Representation. *Yamashita v. Merck & Co.*, No. 11-62473-CIV, 2013 WL 275536, at *4 (S.D. Fla. Jan. 24, 2013) ("The law is clear: A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or dealt with, or expressly contradicted, in a later written contract.") (collecting Florida cases).

In their Objections, Defendants argue that "stacking the modification clause on top of the merger clause is not a valid way to distinguish *Oceanic Villas* because every contract can be modified," and as such, "[t]he R&R basically finds that there can never be fraud if there are boilerplate merger and modification clauses in a contract because the fraudulent statements can be later written into the contract . . . ." [ECF No. 76 at 9, 10]. This is a gross mischaracterization of the Report. The reason that fraud cannot be found in this instance is because the alleged Representation here was *specifically about* the possibility of renegotiating the Agreement. Thus, the modification clause would apply to the conditions of any modification to the Agreement (e.g., that it shall be in writing and signed by the parties). The Report in no way suggests that any misrepresentation, no matter the kind, can be covered by a modification clause.

Furthermore, to the extent that the Representation implies that no amount was ever agreed to, the expressly defined sum of the debt owed to MSC Trading—a sum Defendants agreed to in writing—directly contradicts that implication. *Yamashita*, 2013 WL 275536, at * 5 (dismissing, with prejudice, plaintiff's fraudulent inducement claim because "the unambiguous language of the Separation Agreement directly negates Plaintiff's fraud in the inducement claims"). Defendants could not have reasonably relied on the Representation or the implication that a sum was never agreed to when signing the Contracts.

Defendants only rebuttal is to argue, without any legal authority, that the Report "prefers the contract language over the fraudulent inducement counterclaim", a function only to be done by an impartial jury. [ECF No. 76 at 11]. However, "[i]n the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Ferox, LLC v. ConSeal Int'l, Inc.,* 175 F. Supp. 3d 1363, 1371 (S.D. Fla. 2016). It is clear that the Agreement's express terms—i.e., the merger clause, the modification clause, and the defined sum owed to MSC Trading—bar Defendants' fraudulent inducement counterclaim and affirmative defense.[5]

Additionally, the Court disagrees with Defendants' contention that the Report errs in improperly weighing the credibility of Defendants' evidence regarding its fraudulent inducement counterclaim, thereby entering the purview of a jury. Defendants buttress this argument by referencing the Report's use of the term "flimsy". [ECF No. 76 at 6]. Again, Defendants misread the Report. Judge Torres states that "the gravamen of the defense in this case is a ***legally*** flawed ***theory***" and "[i]f it seems like a flimsy fraud ***theory***, that's because it is." [ECF No. 72 at 3] (emphasis added). Clearly the Report found Defendants' legal theory to be flimsy based on the evidence presented, not that the evidence itself was implausible. *Clay v. Equifax, Inc.*, 762 F.2d 952, 956 (11th Cir. 1985) (in the context of summary judgment, "[t]he court may draw legal presumptions"); *Stewart v. VSMB, LLC*, No. 1:19-CV-22593-UU, 2020 WL 4501937, at *2 (S.D. Fla. June 29, 2020) ("[S]ummary judgment requires an application of undisputed facts to law, in

---

[5] The Report also found that Defendants' fraudulent inducement affirmative defense is barred for an additional reason: the parol evidence rule. Defendants contend that the Report contradicts itself because on the one hand the Report finds that the Contracts adequately cover the Representation, but on the other hand states that Defendants' evidence is barred because it contradicts the terms of the Contracts. [ECF No. 76 at 11]. Again, Defendants misinterpret the Report and conflate the Representation with the implication Defendants themselves advance. The Report clearly states that the merger and modification clauses adequately cover the Representation. However, to the extent that Defendants present evidence to support the implication that an amount was never agreed to—something Defendants do in their Objections—that implication is directly contradicted by the defined sum in the Contracts. These two findings are not contradictory.

7

order to reach a legal conclusion."). In fact, the Report made sure to express that "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." [ECF No. 72 at 4] (citation and quotation omitted). For example, the Report specifically presumes the Representation to be true and still finds Defendants' theory of fraudulent inducement as legally insufficient. *Id.* at 9–10. Thus, Defendants' contention that the Report engages in the function of the jury and improperly weighs evidence is without any credence.[6]

In its Amended Complaint, MSC Trading seeks to recover the full amount of the unpaid debt it's owed. [ECF No. 52-1 at 6]. The Report, in noting the Contracts do not contain an acceleration clause, found that Defendants have not yet breached the Contracts as it concerns future installment payments not yet due. [ECF No. 72 at 26]. Thus, the Report recommends denying summary judgment as to Defendants' Affirmative Defense No. 22. Defendants maintain that, to the extent the Report suggests otherwise, MSC Trading would only be entitled to the installment payments due at the time this action was filed and not the installment payments that have accrued since. [ECF No. 76 at 12–13]. While it is true that MSC Trading is not entitled to the full sum of the debt owed, it is entitled to the payments that have become due through the date of the entry of judgment. *Adkinson v. Nyberg*, 344 So. 2d 614, 616 (Fla. 2d DCA 1977) (allowing plaintiff to amend her pleading to claim any sums then due under the agreement on remand); *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 670 (E.D. Pa. 2003), *aff'd sub nom.,*

---

[6] As another example of the Report's supposed improper credibility determination, Defendants point to the Report's "stilted distillation" of the facts and characterization of Defendants' fraudulent inducement counterclaim as "a suggestion that the contract can be 'renegotiated in the future'". [ECF No. 76 at 5–6]. The Court is not persuaded. The Report's summary of Defendants' version of the facts is just that, a summary, which included specific citations to Defendants' affidavit. The Report stated that Defendants allegedly relied on the representation that the Contracts could be "renegotiated at a later date to **reflect a proper accounting of what SFL owed MSC**" Trading. [ECF No. 72 at 3] (emphasis added). This accurately reflects Defendants' affidavit, [ECF No. 62-1 ¶ 35], and Defendants' argument in their Objections that "no amount was ever agreed to," [ECF No. 76 at 5]. The Report's summation in no way stilted or negatively skewed Defendants' argument.

134 F. App'x 515 (3d Cir. 2005) (finding that, absent an acceleration clause, plaintiff is "entitled to collect only those rents and other payments that had accrued under the lease as of the time of trial"). To hold otherwise would be inefficient and impractical. Because the Amended Complaint already seeks all future payments, it is unnecessary to amend the pleadings to include the sums that have become due since this action has been filed.

## CONCLUSION

Accordingly, after careful consideration, it is **ORDERED AND ADJUDGED** as follows:

(1) Defendants Andres P. Delgado and South Florida Lumber Co.'s Objections to Report and Recommendation on Plaintiff's Motion for Summary Judgment, [ECF No. 76], are **OVERRULED**;

(2) Chief Magistrate Judge Torres' Report and Recommendation on Plaintiff's Motion for Summary Judgment, [ECF No. 72], is **AFFIRMED AND ADOPTED** and incorporated into this Order by reference;

(3) Plaintiff MSC Trading, S.A.'s Motion for Summary Judgment, [ECF No. 59], is **GRANTED, in part,** and **DENIED, in part,** as follows:

   a. GRANTED as to Counts I and III of the Amended Complaint, [ECF No. 52-1];

   b. GRANTED as to Counts I and II of the Counterclaim, [ECF No. 54];

   c. GRANTED as to Affirmative Defense Nos. 1, 3–8, 10–20 of the Answer and Affirmative Defenses, [ECF No. 53]; and

   d. DENIED as to Affirmative Defense Nos. 21–22 of the Answer and Affirmative Defenses, [ECF No. 53];

(4) Affirmative Defense Nos. 2 and 9 of the Answer and Affirmative Defenses, [ECF No. 53], are **STRICKEN**;

(5)     Count II of Plaintiff MSC Trading, S.A.'s Amended Complaint, [ECF No. 52-1], is **DISMISSED;** and

(6)     In accordance with Federal Rule of Civil Procedure 58, final judgment shall be entered separately. Plaintiff MSC Trading, S.A. shall submit a proposed final judgment within fourteen (14) days of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of July, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE